# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

HOSPITALITY INTERNATIONAL, INC.
and SOUTHERN SCOTTISH INNS,
INC.,

       Plaintiffs,

vs.                              Case No:  3:12-cv-1145-J-UAMHMCR

SITARAM, INC. and PANKAJBHA S.
PATEL,

       Defendants.

_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Plaintiffs' Motion for Default Judgment (Doc. 25) filed June 3, 2013.  Despite being directed by the Court to file a response (Doc. 27), Defendants failed to do so.  Accordingly, the Court, having considered the Motion (Doc. 25), the Memorandum of Law (Doc. 31), the evidence presented at the August 6, 2013 hearing, as well as the Second Amended Complaint and exhibits attached thereto (Doc. 17), and being otherwise advised in the premises, recommends Plaintiffs' Motion be **GRANTED**.

## I.  BACKGROUND

On October 19, 2012, Plaintiffs filed the complaint in this case against the two defendants alleging trademark infringement and seeking damages as well as injunctive

---

[1] Any party may file and serve specific, written objections hereto within FOURTEEN (14) DAYS after service of this Report and Recommendation.  Failure to do so shall bar the party from a de novo determination by a district judge of an issue covered herein and from attacking factual findings on appeal.  See 28 U.S.C. §636(b)(1); Rule 72(b), Fed.R.Civ.P.; and Local Rule 6.02(a), United States District Court for the Middle District of Florida.

relief.  (Doc. 1).  On October 25, 2013, Plaintiffs filed an amended complaint (Doc. 6) and on October 30, 2013, Plaintiffs filed a motion for preliminary injunction (Doc. 9). Judge Howard conducted a hearing on the motion for preliminary injunction on November 14, 2012.  (Doc. 16).  Defendants did not appear and Plaintiffs' withdrew their motion for preliminary injunction and instead sought to file a second amended complaint.  (Docs. 15 and 16).

Plaintiffs filed their second amended complaint on December 14, 2012 and added a request for a permanent injunction.  (Doc. 17).  Again, Defendants did not respond and on May 31, 2013, Plaintiffs filed a motion for entry of default.  (Doc. 23). The Clerk entered default against Defendants on June 3, 2013.  (Doc. 24).  That same day, Plaintiffs filed the instant motion seeking a default judgment against Defendants. (Doc. 25).  When Defendants failed to respond to this Motion, the undersigned entered an Order (Doc. 27) directing Defendants to file a response no later than July 8, 2013. Defendants were cautioned that failure to do so would result in the undersigned treating the Motion for Default Judgment as being unopposed, which would "most likely result in the entry of a judgment" against Defendants.  (Doc. 27, p.1).  Again, Defendants failed to respond.  Thereafter, the undersigned presided over an evidentiary hearing on August 6, 2013 at which Plaintiffs presented evidence regarding their damages and Defendants, despite being served with notice of the hearing (Doc. 28), did not appear.

## II.  <u>ANALYSIS</u>

### A.   <u>Standard of Review</u>

Federal Rule of Civil Procedure 55(b) authorizes a district court to enter final default judgment against a defaulting party, however, it is well-established that "a

defendant's default does not in itself warrant the court entering a default judgment."

Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).[2]

Rather, the Court must find must first ensure it has jurisdiction over the claims and there

exists "a sufficient basis in the pleadings for the judgment entered." Id.  A default

judgment has the effect of establishing as fact the plaintiff's well-pleaded allegations of

fact and bars the defendant from contesting those facts on appeal.  Buchanan v.

Bowman, 820 F.2d 359, 361 (11th Cir. 1987) (citing Nishimatsu, 515 F.2d at 1206)).

Accordingly, in ruling on the instant motion for default judgment, the Court must

examine in further detail Defendants' liability under the causes of action alleged in the

Second Amended Complaint.

In addition to the requirements set forth in Rule 55, the Servicemembers Civil

Relief Act, 50 U.S.C. app. §§ 501 et. seq. (the "SCRA"), imposes an additional burden

on a plaintiff seeking to obtain a default judgment against an individual defendant.

Pursuant to § 521 of the SCRA, in any civil action in which a defendant fails to appear:

> [T]he court, before entering judgment for the plaintiff, shall
> require the plaintiff to file with the court an affidavit -
>
> (A) stating whether or not the defendant is in military service
> and showing necessary facts to support the affidavit; or
>
> (B) if the plaintiff is unable to determine whether or not the
> defendant is in military service, stating that the plaintiff is
> unable to determine whether or not the defendant is in
> military service.

50 U.S.C. app. § 521(b)(1).

---

[2] In the case of Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the
Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior
to close of business on September 30, 1981.

In this case, Plaintiffs presented an Affidavit of Military Service as to Defendant, Pankajbha Patel ("Patel"). (Doc. 34).   In the Affidavit, Sally Abbey, a paralegal at the law firm of Adams and Reese, stated that she contacted the military services of the United States and the Department of Health and Human Services and obtained certificates showing Patel is not on active duty status.  The certificates are attached to the Affidavit.  The Court finds that the representations in the Affidavit of Military Service satisfy the requirements of the SCRA and therefore, if jurisdiction and liability are established, the entry of a default judgment will be appropriate.

## B.    Jurisdiction

As an initial matter, the Court notes that it has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 15 U.S.C. § 1121.  Pursuant to 28 U.S.C. §1331, this Court has original jurisdiction over this matter as it is a civil action arising under the Constitution, laws or treaties of the United States.  Specifically, this matter arises under federal trademark law, the Lanham Act, 15 U.S.C. § 1114 et seq.  Further, § 1121 of the Lanham Act provides that federal district courts have original jurisdiction over all actions arising under the Act, "without regard to the amount of controversy or to diversity or lack of diversity of the citizenship of the parties."  15 U.S.C. § 1121.

Moreover, the Court has personal jurisdiction over the Defendants.  According to the allegations in the Second Amended Complaint, which are deemed admitted by virtue of the default, Defendants are citizens of the state of Florida.

## C.    Liability

The Second Amended Complaint alleges that Plaintiff, Southern Scottish Inns, Inc. ("SSI") is the owner of several federally registered marks, the "Scottish Inn Marks."

(Doc. 17, ¶10).  Included in the Scottish Inn Marks is the trademark and service mark "Scottish Inns," which was registered in the United States' Patents & Trademark Office on June 4, 1974.  (Doc. 17, ¶11).  SSI entered into a License and Service Agreement with Plaintiff, Hospitality International, Inc. ("HII"), allowing HII to license others to operate motels under the Scottish Inn Marks in exchange for a license fee.  (Doc. 17, ¶9).

On November 28, 2001, HII and Defendant, Sitaram, Inc. entered into an Assignment of Franchise Agreement (the "Assignment Agreement") which governed the operation of a motel under the Scottish Inn Marks located at 8072 State Road 6 West, Jasper, Florida.  (Doc. 17, ¶12).  HII terminated the agreement on February 10, 2010 due to "Defendants' many breaches."  (Doc. 17, ¶13).  According to Section 12 of the Assignment  Agreement, Sitaram agreed that upon termination, it would cease to operate the motel as a Scottish Inn, cease the use of the Scottish Inn Marks, and de-identify the property.  (Doc. 17, ¶17, Ex. 2).

Thereafter, HII filed suit against both Defendants in Georgia state court for breach of the Assignment Agreement.  (Doc. 17, ¶14).  On August 17, 2010, the Superior Court of DeKalb County, Georgia entered a default judgment in favor of HII and against both Defendants awarding past due royalties, reservation and marketing fees, liquidated damages, and attorney's fees and expenses.  (Doc. 17, ¶15).

Plaintiffs now allege that since the date of the default judgment and continuing to the present, not only have Defendants failed to satisfy the monetary judgment, but Defendants have continued to: operate the formerly franchised motel, improperly use the Scottish Inn Marks and Scottish Inn name without authorization, and improperly hold

themselves out to the public as a licensee of the Scottish Inn Marks.  (Doc. 17, ¶16).

During the hearing, James Bloodworth, the president of HII, testified he visited the motel

operated by Defendants several times in the last six to eight months.  Back in January

of this year, Mr. Bloodworth visited the motel and observed numerous Scottish Inn signs

on the property.  Mr. Bloodworth again visited the motel on May 1, 2013.  At that time,

one large Scottish Inn sign had been removed, however, all of the smaller signs

remained.  Mr. Bloodworth testified he believed the large sign had been damaged

during a storm.  Finally, Mr. Bloodworth testified he visited the property again the day

before the hearing, August 5, 2013.  At that time, only one Scottish Inn sign remained

on the property.  Additionally, Mr. Bloodworth stated he had routinely called the hotel in

order to ascertain how they answered the phone.  Up until about six months ago, the

individual answering the phone identified the hotel as "Scottish Inn."  Now, the individual

identified the hotel as "American Inn."  Finally, Mr. Bloodworth testified that pursuant to

the Assignment Agreement, Defendants were paying a $400.00 franchise fee every

month.  Plaintiffs seek to recoup this payment as damages during the infringement

period.

        "Under § 32(a) of the Lanham Act, 15 U.S.C. § 1114(1)(a), liability for trademark

infringement occurs when a person 'use[s] in commerce any reproduction, counterfeit,

copy, or colorable imitation of a registered mark' which 'is likely to cause confusion, or

to cause mistake, or to deceive.'"  PetMed Express, Inc. v. MedPets.Com, Inc., 336

F.Supp.2d 1213, 1217 (S.D. Fla. 2004) (quoting 15 U.S.C. § 1114(1)(a)).  Accordingly,

to prevail on a claim of trademark infringement, a plaintiff must plead and prove that: (1)

it has a registered mark; (2) the defendant, without permission, used its mark in

commerce; and (3) the defendant's use of the mark is likely to cause consumer confusion.  Id. (citing Int'l Cosmetics Exchange, Inc. v. Gapardis Health & Beauty, Inc., 303 F.3d 1242 (11th Cir. 2002); Frehling Enterprises, Inc. v. Int'l Select Group, Inc., 192 F.3d 1330 (11th Cir. 1999)).

In the Second Amended Complaint (Doc. 17), Plaintiffs allege: (1) SSI is the owner of the Scottish Inn Marks and through the License and Service Agreement, HII is permitted to license others to operate motels under the Scottish Inn Marks; (2) Defendants continued to use the Scottish Inn Marks after Plaintiff's valid termination of the Assignment Agreement and did so without Plaintiffs' permission; and (3) the use of the Scottish Inn Marks after the termination of the Assignment Agreement is likely to cause consumer confusion "concerning the source, affiliation, or sponsorship of goods and services being offered under the Scottish Inn Marks."[3]  (Doc. 17). These allegations, which are deemed admitted by virtue of the default, are sufficient to state a claim for trademark infringement.

## D.   **Relief Requested**

Having found Plaintiffs entitled to a default judgment on their claim for trademark infringement, the undersigned turns now to the relief requested by Plaintiffs.  In the instant case, Plaintiffs seek both monetary damages as well as a permanent injunction. Additionally, Plaintiffs seek their attorneys' fees and costs.

---

[3]  Although Plaintiffs' allegations regarding the likelihood of consumer confusion are certainly conclusory, the undersigned believes Plaintiff has made a sufficient showing.  The Court is satisfied that Defendants' continuing use of the Scottish Inns Mark leads consumers to wrongly believe Defendants are affiliated with Scottish Inns and/or HII.  See Burger King Corp. v. Mason, 710 F.2d 1480, 1492 (11th Cir. 1983) ("Common sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchisor's trademark.").

### 1.  Damages

The Lanham Act provides that a successful plaintiff may recover: (1) the defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.  See 15 U.S.C. §1117(a).  In the instant case, Plaintiff, HII is seeking the damages it sustained as a result of Defendants' infringement.  Specifically, HII seeks the monthly payments provided in the Assignment Agreement for the period from August 17, 2010 (the date of the state court default judgment) through August 6, 2013 (or thirty-five months and twenty-one days).  As noted above, during the hearing, Mr. Bloodworth testified that pursuant to the Assignment Agreement, Defendants were required to pay $400.00 per month.  Accordingly, Plaintiffs seek $400 x 35 months = $14,000.00 plus $12.90[4] x 21 days = $270.90 for a total of $14,270.90.  The undersigned believes Plaintiffs are entitled to this sum as damages.

In addition, Plaintiffs ask the Court to award them treble damages pursuant to 15 U.S.C. § 1117(a), which provides:

> In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum in either of the above circumstances shall constitute compensation and not a penalty.

The Eleventh Circuit has observed that this damages provision "'vests considerable discretion in the district court.'"  Tiramisu Intern., LLC v. Clever Imports, LLC, 741 F.Supp.2d 1279, 1291 (S.D. Fla. 2010) (quoting Mason, 710 F.2d at 1495).

---

[4]  The Court's calculations indicate the daily rate would be $13.15, however, as Plaintiffs ask for $12.90, the Court will utilize that number for the daily rate.

Additionally, such an enhanced damages award "'is discretionary, but it may not be punitive, and must be based on a showing of actual harm.'" Optimum Technologies, Inc. v. Home Depot U.S.A., Inc., 217 F.App'x. 899, 903 (11th Cir. 2007) (quoting Babbit Electronics, Inc. v. Dynascan Corp., 38 F.3d 1161, 1183 (11th Cir. 1994)).  In the instant case, the undersigned believes an award of treble damages would be punitive and therefore, should not be awarded.  Plaintiffs have shown no actual harm or compensation due them above and beyond the loss of the $400 monthly payment. Accordingly, the award of treble damages would "go beyond compensation and would amount to punitive damages, which are not permitted."  See Tiramisu Intern., LLC, 741 F.Supp.2d at 1291-92 (court declines to award treble damages where plaintiff failed to show actual harm and as such, an award of treble damages would amount to an award of punitive damages).

### 2.  Permanent Injunction

Plaintiffs also seek the entry of a permanent injunction preventing Defendants from: (1) using the Scottish Inn Marks in connection with the advertising, promotion, or sale of any product or service; (2) operating or doing business under any name or mark, or in any manner that is likely to give the public the impression that the motel is licensed by HII or otherwise associated with the HII system or other Scottish Inn licensed motels; and (3) committing any other act that infringes the Scottish Inn Marks or otherwise unfairly competes with the HII system or other Scottish Inn licensed motels.  (Doc. 31, p.8).

A plaintiff seeking a permanent injunction must demonstrate four elements: "(1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary

damages, are inadequate to compensate for that injury; (3) considering the balance of

hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4)

the public interest would not be disserved by a permanent injunction." <u>Angel Flight of</u>

<u>Ga., Inc. v. Angel Flight America, Inc.</u>, 522 F.3d 1200, 1208 (11th Cir. 2008).

Additionally, the Eleventh Circuit has observed:

> in "ordinary trademark infringement actions ... complete
> injunctions against the infringing party are the order of the
> day."  The reason is simple: the public deserves not to be led
> astray by the use of inevitably confusing marks—even in
> cases in which more than one entity has a legal right to use
> the mark.

<u>Id.</u> at 1209 (quoting <u>SunAmerica Corp. v. Sun Life Assurance Co. of Canada</u>, 77 F.3d

1325, 1336-37 (11th Cir. 1996)) (internal citations omitted).

As for the first element, irreparable harm, the Eleventh Circuit has noted that

"'[g]rounds for irreparable injury include loss of control of reputation, loss of trade, and

loss of goodwill.'" <u>Ferrellgas Partners, L.P. v. Barrow</u>, 143 F.App'x. 180, 191 (11th Cir.

2005) (quoting <u>Pappan Enterprises, Inc. v. Hardee's Food Sys., Inc.</u>, 143 F.3d 800, 805

(3rd Cir. 1998)).  Indeed, the court in <u>Ferrellgas</u> observed:

> "[T]he most corrosive and irreparable harm attributable to
> trademark infringement is the inability of the victim to control
> the nature and quality of the defendants' goods.  Even if the
> infringer's products are of high quality, the plaintiff can
> properly insist that its reputation should not be imperiled by
> the acts of another."

<u>Id.</u> at 190-91 (quoting <u>Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.</u>, 846 F.2d

1079, 1092 (7th Cir. 1988)).  Finally, a plaintiff is not required to show that defendant

"acted in such a way as to damage the reputation of the plaintiff" for it is simply "the loss

of control of one's reputation by the adoption of a confusingly similar mark that supplies

the substantial threat of irreparable harm." <u>Id.</u> at 191.

Here, Defendants' continued use of the Scottish Inn Marks after the termination of the Assignment Agreement certainly caused Plaintiffs to lose control of the reputation of the Marks.  Accordingly, the undersigned is satisfied that the first element for a permanent injunction has been satisfactorily shown.

Plaintiffs have also adequately shown the second element, that legal remedies are inadequate to compensate them for their injuries.  Plaintiffs' loss of control over the reputation of and goodwill associated with the Scottish Inn Marks is "ongoing, impossible to quantify, and causes long-term damage."[5]  Overhead Door Corp. v. Burger, No. 1:12-cv-101, 2013 WL 3057796, *8 (M.D. Ga. June 17, 2013) (holding that loss of control over reputation was sufficient to establish inadequacy of legal remedies).

Finally, the balance of hardships and the public interest also weigh in favor of granting the permanent injunction.  As noted above, Plaintiffs' reputation may be damaged if Defendants are permitted to continue to hold their motel out as a Scottish Inn.  On the other hand, based on the testimony during the hearing, Defendants have removed all but one of the Scottish Inn signs and have ceased answering the phone as "Scottish Inn."  Therefore, it is clear Defendants will be able to continue to operate their motel without utilizing the Scottish Inn Marks.  As for the public interest, the Eleventh Circuit has repeatedly held that the "'public interest' relevant to the issuance of a permanent injunction is the public's interest in avoiding unnecessary confusion."  Angel Flight, 522 F.3d at 1209.  Certainly, in the instant case, the public will benefit from eliminating any confusion regarding Defendants' affiliation or association with Scottish Inn.

---

[5]  The Court notes that Defendants have removed most of the Scottish Inn signs and have ceased to identify the motel as a Scottish Inn.  However, as there is still one Scottish Inn sign on the property, Defendants are continuing to utilize the Scottish Inn Marks.

Plaintiffs have satisfied all the elements necessary to succeed in their claim for injunctive relief.  Accordingly, this Court recommends that a permanent injunction be issued against Defendants, enjoining them from using the Scottish Inn Marks.

### 3.  Attorneys' fees and costs

Finally, Plaintiffs seek an award of attorneys' fees in the amount $27,047.50 and $633.77 in costs.  Pursuant to 15 U.S.C. § 1117(a), "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  For purposes of the statute, "exceptional cases" are those that involve conduct that is "malicious, fraudulent, deliberate, and willful," or in which "evidence of fraud or bad faith" exists.  Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc., 253 F.3d 1332, 1335-36 (11th Cir. 2001).  Thus, a high degree of culpability on the part of the infringer is necessary to justify an award of attorneys' fees.

The undersigned agrees with Plaintiffs that Defendants' conduct in continuing to use the Scottish Inn Marks for a period of over three (3) years after termination of the Assignment Agreement; after five (5) demands for them to cease use of the Marks; after the filing of the state court litigation against them for breach of the Assignment Agreement; after the entry of a default judgment in the state court litigation for unpaid royalty, reservation system, and marketing fees; after the filing of the instant litigation; and after the entry of a clerk's default against them in the instant litigation; is sufficient to show malicious, fraudulent, deliberate, and willful conduct on the part of Defendants such that an award of attorneys' fees is warranted.  See Tiramisu Intern., LLC, 741 F.Supp.2d at 1295 (awarding attorneys' fees in case where the defendant continued to engage in infringing conduct after receiving two cease and desist letters, after the

litigation was initiated against it, and after stating in discovery responses that it had ceased engaging in such conduct);  Yellow Cab Co. of Orlando, Inc. v. Celebration Transp., Inc., No. 8:12-cv-1910, 2013 WL 656339, *7 (M.D. Fla. Jan. 28, 2013) (finding the defendant's failure to appear in the litigation, the defendant's continuation of infringing activities after a decision by the National Arbitration Forum, and after the plaintiff filed the instant action was sufficient to show an exceptional case); FSC Franchise Co., LLC, v. Express Corporate Apparel, LLC, No. 8:09-cv-454, 2011 WL 1226002, at *8-9 (M.D. Fla. Feb. 28, 2011) (agreeing that "[d]efendants' use of Plaintiff's marks after the termination of the [license agreement], dilatory conduct throughout the litigation, and continued use of the trademarks after the filing of the complaint and entry of the preliminary injunction[ ] is the deliberate or willful conduct necessary warranting the finding of an exceptional case").

Having determined an award of attorneys' fees is warranted, the undersigned must turn to the reasonableness of the amount requested.  Plaintiff seeks a total of $27,047.50 in fees ($18,420.00 from attorney Lee Goldstein and $8,627.50 from attorney Michael Duncan).  In the Eleventh Circuit, attorneys' fees are calculated under a "lodestar" formula by multiplying the number of hours reasonably expended by a reasonable hourly rate. Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994). Accordingly, the undersigned must determine whether the hourly rate requested is reasonable and then, whether the number of hours reported by counsel is also reasonable.

### a. Reasonable Hourly Rate

An attorney's reasonable hourly rate is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." Norman v. Housing Authority of City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988) (citing Blum v. Stenson, 465 U.S. 886, 895-96 n. 11, 104 S.Ct. 1541, 1547 n. 11 (1984)).  To aid in a court's determination of an attorney's reasonable hourly rate, it may also consider the relevant factors as set out in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).  The Johnson factors include: (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the degree of skill necessary to serve the client properly, (4) the attorney's inability to accept other employment because he accepted the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount of damages involved and the relief or results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the attorney's professional relationship with the client, and (12) awards in similar cases.  Johnson, 488 F.2d at 717. The going rate in the community is the most critical factor in setting the fee rate.  Martin v. University of South Alabama, 911 F.2d 604, 610 (11th Cir. 1990).

"The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." Norman, 836 F.2d 1292 at 1303.  With respect to rates, an applicant may meet his or her burden by producing either direct evidence of rates charged under similar circumstances or opinion evidence of reasonable rates. Id. at 1299.  In addition, as the Eleventh Circuit noted:

> "the court . . . is itself an expert on the question [of attorney's fees] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value."

Id. at 1303 (quoting Campbell v. Green, 112 F.2d 143, 144 (5th Cir. 1940)).

To support their request for attorneys' fees, Plaintiffs presented the testimony of Lee Goldstein and Michael Duncan, the two attorneys working on the matter along with their billing records.[6]  Mr. Goldstein testified that his hourly rate is $300.00 per hour and he has been practicing commercial litigation since 1979.  Mr. Duncan testified his customary hourly rate is $330.00 per hour, however, he discounted it such that he billed an effective hourly rate of $230.00[7] per hour.  Additionally, Plaintiffs presented the testimony of a local attorney, Harold Timothy Gillis.  Mr. Gillis opined that based on his fifteen years of practice, primarily in the Jacksonville area, and his knowledge of the two attorneys, the hourly rates charged by Mr. Goldstein and Mr. Duncan are reasonable, if not on the low side of the range for hourly rates charged by comparable attorneys.

Based on the testimony of Mr. Goldstein, Mr. Duncan, and Mr. Gillis, along with the Court's own knowledge and judgment, the undersigned believes the hourly rates requested by the attorneys ($300.00 for Mr. Goldstein and $213.02 for Mr. Duncan) are reasonable.

---

[6]  In the billing records presented by Mr. Duncan, there are four entries for work performed by Jamie Olinto.  As there was no testimony presented regarding the experience and qualifications of this attorney, the Court cannot render an opinion as to a reasonable hourly rate.  Accordingly, it is recommended that those four entries be deducted from the amount of fees awarded to Plaintiffs.

[7]  In examining Mr. Duncan's billing records, the Court calculated Mr. Duncan's effective hourly rate to be $213.02.  The Court will therefore, use that rate.

### b. Hours Reasonably Expended

Next, the Court must determine whether the number of hours requested by Plaintiffs is reasonable. At the hearing, Mr. Goldstein testified he spent 61.4 hours[8] on the matter and the billing records submitted by Mr. Duncan reveal he billed 40.5 hours. The Court has reviewed the billing records and aside from the time billed by attorney, Jamie Olito, the Court believes the remaining entries appear to be reasonable. Therefore, under the Eleventh Circuit's lodestar calculation, the undersigned recommends Plaintiffs be granted an award of attorneys' fees as follows: $18,420.00 for the 61.4 hours of work performed by attorney Lee Goldstein and $8,197.50 ($8,627.50 less the $430.00 charged by attorney Jamie Olito) for the work performed by attorney Michael Duncan, for a total of $26,617.50.

### c. Costs

Plaintiffs also seek the recovery of $633.77 in costs ($283.77 in unspecified costs along with the $350.00 filing fee). In reviewing the billing records from Mr. Goldstein's firm, the Court calculated $263.27 in expenses for UPS charges, hotel expenses, and a PACER fee.

Under 15 U.S.C. § 1117, a prevailing plaintiff is entitled to recover "the costs of the action." The term "costs of the action" is not defined by the Lanham Act. However, the term has been interpreted as meaning the costs allowed under 28 U.S.C. § 1920. See Rib City Group. Inc. v. RCC Restaurant Corp., No. 2:09-cv-827, 2010 WL 4739493, *2 (M.D. Fla. Nov. 16, 2010) (denying costs sought under § 1117 that are not recoverable under § 1920).

---

[8] When the Court added up the time on the billing record from Mr. Goldstein, it calculated a total of 61.8 hours. The Court will reconcile this discrepancy by accepting the amount of time testified to by Mr. Goldstein.

Pursuant to 28 U.S.C. § 1920, a prevailing party may recover: (1) fees of the clerk and marshal; (2) fees for transcripts necessarily obtained for use in the case: (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and copies of papers necessarily obtained for use in the case: (5) docket fees under 28 U.S.C. § 1923; and (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under 28 U.S.C. § 1828.  As the only recoverable expense sought by Plaintiffs is the filing fee, I recommend Plaintiffs be awarded $350.00 in costs.  See Tiramisu Intern., 2010 WL 3199718, at *16 (denying as non-compensable costs under § 1920 telephone calls, courier service charges, postage, and computer research charges); Smith v. HM Wallace, Inc., No. 08-cv-22372, 2009 WL 3179539, *3 (S.D. Fla. Oct.1, 2009) (Lexis and PACER costs not recoverable under § 1920).

Accordingly, after due consideration, it is

**RECOMMENDED**:

Plaintiffs' Motion for Default Judgment (Doc. 25) be **GRANTED** as follows:

1. A permanent injunction be issued against Defendants, enjoining them from any further use of the Scottish Inn Marks.

2. Plaintiffs be awarded $14,270.90 in damages against Defendants.

3. Plaintiffs be awarded $26,617.50 in attorneys' fees and $350.00 in costs.

**DONE** and **ENTERED** in Jacksonville, Florida this  26th  day of August, 2013.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

The Honorable Marcia Morales Howard
United States District Judge,

Counsel of Record

Pankajbha S. Patel and Sitaram, Inc.
c/o Registered Agent: Pankaj Patel
8072 State Road 6 West
Jasper, FL 32052